UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| HASSAN M. AHMAD | ) | Case No. 14-14380-RGM |
| | ) | Chapter 13 |
| _____ | ) | |
| | ) | |
| SHAMSIYA SHERVANI | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | Adversary Proceeding No. 15-01001 |
| HASSAN M. AHMAD | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HASSAN M. AHMAD | ) | |
| d/b/a NUBANI & HASSAN | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE HASSAN M. AHMAD | ) | |
| LAW FIRM, PLLC | ) | |
| d/b/a THE HMA LAW FIRM | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

**SECOND AMENDED COMPLAINT OBJECTING TO DISCHARGEABILITY**

COMES NOW the Plaintiff, Shamsiya Shervani, by counsel, and for her Second Amended Complaint Objecting to the Dischargeability of her claims against the Defendant, Hassan M. Ahmad, Defendant, pursuant to 11 U.S.C. § 523 (a)(2), states as follows:

*Robert L. Vaughn, Jr., VSB 20633*
*O'Connor & Vaughn LLC*
*11490 Commerce Park Drive, Suite 510*
*Reston, VA 20191*
*T – 703-689-2100*
*F – 703-471-6496*

## PARTIES AND JURISDICTION

1. Plaintiff, Shamsiya Shervani ("Ms. Shervani"), is an individual and a resident of Fairfax County, Virginia.

2. Defendant, Hassan M. Ahmad ("Mr. Ahmad"), is an attorney currently licensed and practicing law in the Commonwealth of Virginia, with an office located at 1039 Sterling Road, Suite 204, Herndon, Virginia 20170. At the time of the majority of the events complained of herein, Mr. Ahmad was practicing law in Virginia but was not licensed in the Commonwealth, having not obtained his Virginia license until June 15, 2012. At all times pertinent, Mr. Ahmad held himself out to the general public, and to Ms. Shervani in particular, as an able, competent and experienced attorney, knowledgeable in the field of personal injury law in the Commonwealth, and qualified and capable of representing the interests of Ms. Shervani. Mr. Ahmad further represented to Ms. Shervani that he was able to perform the duties and responsibilities and comply with the standard of care required of attorneys and law firms in representing clients such as Ms. Shervani.

3. Defendant, The Hassan M. Ahmad Law Firm PLLC, doing business as The HMA Law Firm ("HMA Law Firm") is a professional corporation which was organized pursuant to the laws of the Commonwealth of Virginia on or about June 18, 2010. Mr. Ahmad is a member of the HMA Law Firm and, upon information and belief, is, and has been since its formation, the sole owner and managing member of the HMA Law Firm.

4. At least as of May 25, 2009, and for a period of time thereafter, Mr. Ahmad practiced law under the name of Nubani & Ahmad, with offices located at 1568 Spring Hill Road, Suite 222, McLean, Virginia 22102. The other member of the firm of Nubani & Ahmad

was Ashraf Nubani ("Mr. Nubani"), an attorney licensed and practicing in the Commonwealth of Virginia.

5. The acts by the Defendants complained of herein by Ms. Shervani principally took place in Fairfax County, Virginia, where at all pertinent times, Mr. Ahmad, Nubani & Ahmad, and the HMA Law Firm were engaged in the practice of law.

6. This court has jurisdiction of this controversy under 28 U.S.C. §§ 1334 and 157(a).

7. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I) to the extent it seeks a determination of nondischargeability; the request for monetary damages is non-core. Venue is proper in this Court under 28 U.S.C. §§ 1409(a).

## FACTS OF THE COLLISION

8. On April 28, 2009, at approximately 3 p.m., Ms. Shervani was operating her 2004 Volkswagen Passat on the Fairfax County Parkway in Herndon, Virginia. Ms. Shervani took the Spring Street exit off the Parkway. The subject intersection is controlled by a traffic light which at the time was "red" for traffic heading in the direction that Ms. Shervani was heading. Ms. Shervani's vehicle came to a full and complete stop, a safe distance behind another motor vehicle which was waiting for the light.

9. At all times pertinent herein, Ms. Shervani was wearing her seat belt; her motor vehicle was operating properly, and free of any defects.

10. While stopped at the light, suddenly and without notice, Ms. Shervani's vehicle was struck with great force and violence from behind by another vehicle being operated by a Ms. Annie G. B. Pena ("Ms. Pena").

11. The force of the impact from Ms. Pena's vehicle to the rear of Ms. Shervani's vehicle drove Ms. Shervani's car into the rear of the vehicle in front of her, causing a second collision.

12. The force of the impact also caused Ms. Shervani to be thrown violently about her vehicle, among other things, striking her knee on the dashboard of the car.

13. Despite her injuries, and after absorbing the immediate shock of the incident, Ms. Shervani and the driver who was in the vehicle in front of her, were able to exit their respective motor vehicles, at which point they came into contact with Ms. Pena.

14. Ms. Pena initially resisted calling the police, but after Ms. Shervani insisted, Ms. Pena did so, exclaiming to the effect, "Oh, I'll call the cops, I do this all the time."

15. Officer L. C. Anderson of the Fairfax County Police responded to the scene. Based upon his investigation, he determined that Ms. Pena was solely at fault for the collision.

16. Although Ms. Shervani was in significant pain and discomfort, she was able to drive her vehicle home. That afternoon and through the course of the night, the pain and discomfort intensified, at which point she presented herself to the emergency room at Reston Hospital Center. At the time of her presentation, Ms. Shervani was experiencing neck and back pain, pain in the right hip, and right knee. After examination and diagnostic testing, Ms. Shervani was diagnosed as having sustained cervical strain with cervicalgia, trapezius strain, and strain of the right knee as a result of the collision. She was given a prescription for pain medication and a muscle relaxant and instructed to follow up with her primary care physician and an orthopedic specialist.

17. Ms. Shervani's condition continued to deteriorate, necessitating additional medical care and treatment. Initially, her injuries were attempted to be treated conservatively through rest, physical therapy, and medication.

18. Ultimately, conservative treatment was not sufficient, and Ms. Shervani was required to undergo extensive additional medical care, treatment and rehabilitation, including but not limited to, multiple injection therapies, right hip arthroscopic surgery in May 2010, right inguinal hernia repair in June 2011, left wrist arthroscopic surgery and triangular fibro cartilage complex repair in June 2011 with follow up surgery in October 2012, and surgery for right shoulder rotator cuff repair, subcromial decompression and labral repair in October 2012.

19. As of this date and time, Ms. Shervani continues to experience pain in her shoulder, neck, back and right knee, as a direct and proximate result of the collision of April 28, 2009, which, in turn, has necessitated ongoing treatment for fibromyalgia.

20. At the time and place of the aforesaid collision, it was the duty of Ms. Pena to operate her motor vehicle with reasonable care and with due regard for others using the highways of the Commonwealth of Virginia, including Ms. Shervani.

21. Notwithstanding said duties, Ms. Pena did carelessly, recklessly, and negligently operate her motor vehicle, including, but not limited to, failing to pay full time and attention, failing to maintain her vehicle under proper control at all times, failing to stop for Ms. Shervani's vehicle, and otherwise failing to operate her motor vehicle in accordance with the traffic rules and regulations then and there in place.

## FACTS OF THE LEGAL REPRESENTATION

22. On May 25, 2009, Ms. Shervani sent an email to Mr. Ahmad regarding the collision and inquiring about obtaining his legal assistance with respect to a claim against Ms. Pena. A copy of said email is attached to the initial Complaint filed herein as **Exhibit A**.

23. On May 26, 2009, Mr. Ahmad responded with an email stating that Ms. Shervani needed legal assistance and affirmatively represented that his firm could handle the case.

24. In the email of May 26, 2009, Mr. Ahmad stated that he was not licensed in Virginia but that Mr. Nubani would be the "attorney of record" on her case. A copy of said email is attached to the original Complaint filed herein as **Exhibit B**.

25. Notwithstanding the aforesaid communication, Mr. Ahmad did not consult with Mr. Nubani before writing the aforesaid email, and did not inform him of Ms. Shervani's interest in retaining Nubani & Ahmad to represent her in the subject personal injury claim.

26. Ms. Shervani met with Mr. Ahmad on or about June 1, 2009. During that meeting, and prior to her retention of him, Mr. Ahmad represented to Ms. Shervani that he was an able, competent and experienced attorney in the field of personal injury law in the Commonwealth of Virginia, and was qualified and capable of representing the interests of Ms. Shervani in her personal injury matter. The representations of Mr. Ahmad were false, and known by him to be false at the time he made the same. The foregoing representations were material in Ms. Shervani's decision to retain Mr. Ahmad's services.

27. At no time before his retention did Mr. Ahmad disclose to Ms. Shervani that, in actuality, his practice was almost exclusively, if not exclusively, immigration law or criminal proceedings arising out of immigration matters, and that he had no experience as an attorney

6

handling personal injury claims. The foregoing omissions were material in Ms. Shervani's decision to retain Mr. Ahmad's services.

28. At the meeting on or about June 1, 2009, Mr. Ahmad further represented to Ms. Shervani that although he was not licensed in Virginia, he could still represent her and would be the attorney who would handle all aspects of the claim, including the preparation of any documents related thereto, except for any appearances in Court. Mr. Ahmad also again represented that he would consult with Mr. Nubani regarding the matter, and in the event a court appearance were required, Mr. Nubani would make the court appearance. Mr. Ahmad led Ms. Shervani to believe that Mr. Nubani was an experienced practitioner in the field of personal injury law and was able and competent to handle personal injury litigation. In reality, Mr. Nubani had never filed a personal injury action, and had no inexperience whatsoever in trying personal injury cases, facts known to Mr. Ahmad, but not disclosed to Ms. Shervani as part of his efforts to induce Ms. Shervani to agree to his representation of her.

29. On or about June 1, 2009, reasonably relying upon the representations and omissions of Mr. Ahmad, Ms. Shervani entered into a written retainer agreement ("Retainer Agreement") prepared by Mr. Ahmad and/or on his behalf, pursuant to the terms of which Nubani & Ahmad was retained to represent her with regard to her claim for personal injuries arising out of the collision caused by Ms. Pena. A copy of the Retainer Agreement is attached to the original Complaint filed herein as **Exhibit C**.

30. At the time of their retention, Mr. Ahmad and Nubani & Ahmad knew that the claim of Ms. Shervani was governed by Virginia law and that any action which would be filed on her behalf would need to be filed in the courts of the Commonwealth. Mr. Ahmad and Nubani &

7

Ahmad also knew that only an attorney licensed in Virginia would be able to file a claim on behalf of Ms. Shervani in the courts of the Commonwealth.

31.  As of at least September 2009, Mr. Ahmad and Mr. Nubani terminated the practice of Nubani & Ahmad, and Mr. Ahmad began to practice as the Hassan M. Ahmad Law Firm with offices located at 1568 Spring Hill Road, Suite 200A, McLean, Virginia 22102. Sometime after the split, Mr. Ahmad related to Ms. Shervani that the firm had split, but assured her that the split would not affect her case, that Mr. Ahmad continued to represent her and was capable and competent to do so. However, between the initial communication with Ms. Shervani on 26, 2009, his retention of June 1, 2009 and his communications in September 2009, Mr. Ahmad still had no experience or expertise in the handling of personal injury matters, and failed to disclose that information to Ms. Shervani. The continuing representations of Mr. Ahmad as to his capabilities were false and known by him to be false, and were made so as to induce Ms. Shervani to continue with him as her counsel. In furtherance of his efforts to induce Ms. Shervani to continue with him as her counsel, Mr. Ahmad also continued to fail to disclose material facts to Ms. Shervani as to his lack of experience and knowledge in personal injury matters, and that he had never communicated or consulted with Mr. Nubani regarding the matter.

32.  On November 11, 2009, Mr. Ahmad wrote letters to several of Ms. Shervani's medical care providers on the letterhead of Hassan M. Ahmad Law Firm PLLC advising them that "this Firm now represents the interests of Shamsiya Fatima Shervani." At the time the letter was written, the Hassan M. Ahmad Law Firm PLLC did not exist, and in fact, did not come into existence until June 18, 2010, a fact known to Mr. Ahmad but not disclosed to either Ms. Shervani or to the medical care providers. A copy of the aforesaid letters and of the records of

8

the Virginia State Corporation Commission regarding the formation of the Hassan M. Ahmad Law Firm PLLC were attached as **Exhibits D and E**, respectively, to the original Complaint.

33.     On or about March 1, 2010, Ms. Shervani received a letter from the insurance carrier for Ms. Pena which, by coincidence, was also her own insurance carrier, with a settlement offer.  The letter was sent to her and not to Mr. Ahmad.  Ms. Shervani forwarded the letter to Mr. Ahmad and requested his advice on what to do in response.  Mr. Ahmad advised her to reject the offer.  Ms. Shervani, in reliance upon his advice, rejected the offer.  Mr. Ahmad thereafter contacted the insurance carrier and rejected the offer.

34.     On or about April 29, 2010, Mr. Ahmad relayed to Ms. Shervani that the case was still in the "collect-documents" stage, and that he had "entered my appearance" as Ms. Shervani's attorney with the insurance carrier.

35.     On June 22, 2010, Mr. Ahmad's office contacted Ms. Shervani and related that it was "working on your demand letter" and requested information about how the accident occurred."  Ms. Shervani responded on the same day with the requested information.

36.     On July 28, 2010, Mr. Ahmad's office contacted Ms. Shervani and related that "I am almost done with the demand letter" and requested that Ms. Shervani obtain a letter from her employer detailing the hours and wages lost as a result of the collision. On the same day, Ms. Shervani responded that she had sent a request to her employer for the information.  Ms. Shervani also asked for information regarding the status of the demand and whether she would be able to see it and approve it before it was submitted.  In fact, not only was a demand letter not "almost done," Mr. Ahmad had not commenced the preparation of such a letter.  The representations regarding the preparation of the demand letter were false when made, were made

9

knowing the same to be false, and were made with the intent to induce Ms. Shervani to continue with Mr. Ahmad as her counsel.

37. The following day, July 29, 2010, Ms. Shervani provided the information requested regarding her lost wages for her former employer and on August 10th, the requested information regarding her then current employer; Ms. Shervani followed up the next day, at Mr. Ahmad's request, with a letter on the employer's letter head with the same information

38. By email of August 25, 2010, Mr. Ahmad assured Ms. Shervani that "we are staying on top of the situation." Despite the use of the term "we," Mr. Ahmad was a solo practitioner, was not licensed in Virginia, and had no attorney in his office licensed in Virginia. At no time had Mr. Ahmad consulted with Mr. Nubani and/or any other Virginia attorney regarding Ms. Shervani's claim, including their filing a lawsuit on her behalf in a Virginia court.

39. Contrary to his representations, Mr. Ahmad was not "on top of the situation" as he represented, having never commenced preparation of the demand letter, having not prepared for the filing of suit, and not even knowing that there was a 2 year statute of limitations in Virginia for the filing of personal injury claims. The foregoing representation was false when made, was made by Mr. Ahmad knowing the same to be false, and was made with the intent to induce Ms. Shervani to continue with Mr. Ahmad as her counsel.

40. On September 21, 2010, Mr. Ahmad's office wrote again telling Ms. Shervani that the "demand letter is almost ready." The foregoing representation was false when made, was made knowing the same to be false, and was made with the intent to induce Ms. Shervani to continue with Mr. Ahmad as her counsel.

41. Over the ensuing months, Ms. Shervani continued to provide information to Mr. Ahmad regarding her ongoing medical treatment. However, as of April 28, 2011, Mr. Ahmad

had not settled Ms. Shervani's claim, nor filed an action on her behalf; Mr. Ahmad had not even prepared a demand letter. As Mr. Ahmad was not a member of the Virginia Bar, and thus neither Mr. Ahmad nor the HMA Law Firm were able to file any action in a Virginia Court. Mr. Ahmad failed to provide this information to Ms. Shervani, which omissions were material in her continuing with Mr. Ahmad as her counsel.

42.    The statute of limitations on Ms. Shervani's lawsuit ran on April 28, 2011; at no time prior to the expiration of the limitations period did Mr. Ahmad advise her that the statute of limitations was April 28, 2011, or that she was required to settle her claim or file a lawsuit on or before that date or the claim would otherwise be forever barred. Instead, Mr. Ahmad lead Ms. Shervani to believe that the statute of limitations in her case had not run because she was continuing to receive medical treatment for the injuries she had sustained in the collision. Ms. Shervani relied on these omissions and representations in continuing with Mr. Ahmad as her counsel.

43.    On May 17, 2011, Mr. Shervani asked to see a copy of a demand letter if, in fact, one existed. Despite Mr. Ahmad's representations, individually and through his agents that such a letter was being prepared, no such letter was ever provided, nor did it ever exist. Mr. Ahmad's representations regarding the existence of a demand letter were false, were known to be false when made, and were made with the intention of inducing Ms. Shervani to continue on with Mr. Ahmad as her counsel.

44.    On June 13, 2011, in response to Ms. Shervani's concerns regarding how long it was taking to resolve her case, Mr. Ahmad wrote to her, this time reiterating his prior representations that in Virginia, the "continuing treatment doctrine tolls the running of the statute of limitations" and further advised her that "So long as you were seeking treatment and we can

11

show there was a physician-patient relationship (which of course there has been) – the statute of limitations is tolled." Mr. Ahmad closed out that communication by telling Ms. Shervani that it was "Better to file when the treatment is close to finishing so we can move the lawsuit on." A copy of the aforesaid email was attached as **Exhibit F** to the original complaint. Mr. Ahmad continued to lead Ms. Shervani to believe that a demand letter was being prepared and that he was making efforts to resolve her case, all with the intent that she would continue to utilize him as her counsel.

45. On February 2, 2012, Mr. Ahmad wrote to Ms. Shervani and advised that the insurance carrier was "lowballing" her by offering to pay $2,969.00 for medical bills incurred by Ms. Shervani, telling her that he would "send a more formal demand package soon" and that "it appears we will be filing a lawsuit." Mr. Ahmad also told Ms. Shervani "do not worry." Ms. Shervani responded, concurring with Mr. Ahmad's statement that "There is no option but to file a lawsuit…." She also asked Mr. Ahmad to let her know what she needed to do, and noted that she had been trying to get in touch with him to provide information regarding her medical treatment. A copy of the aforesaid email was attached as **Exhibit G** to the original Complaint.

46. Contrary to his representations, Mr. Ahmad had never prepared a demand letter or package, and had never made any efforts to settle her case at any time, much less before the statute of limitations ran on the claim. Instead, Mr. Ahmad continued to lead Ms. Shervani to believe that a demand letter was being prepared and that he was making efforts to resolve her case, all with the intent that she would continue to utilize him as her counsel.

47. Mr. Ahmad did not obtain his license to practice law in Virginia until June 15, 2012, that being the first day he would have been authorized and able to file an action on Ms.

12

Shervani's behalf, and which date was more than 1 year after the statute of limitations on Ms. Shervani's claim had expired.

48. On or about August 3, 2012, Mr. Ahmad received a letter from the insurance carrier informing him it had closed its file and that no further payments would be issued. Mr. Ahmad did not inform Ms. Shervani of this communication or provide her with a copy of the same. Mr. Ahmad failed to disclose this information to Ms. Shervani so as to induce her to continue with him as her counsel.

49. On December 11, 2012, Mr. Ahmad wrote to Ms. Shervani stating that he wanted to meet with her to go over everything so he could "finish drafting the complaint" and get her case filed. At no time did Mr. Ahmad inform Ms. Shervani that the statute of limitations on her case had run over a year before, or that he had never prepared a demand letter or demand package, and that he had done nothing to try and settle her case.

50. On January 3, 2013, Mr. Ahmad wrote to the representative of the insurance carrier advising that he was "still preparing documentation to sue Geico" and that he was "still the lawyer in the case." There is no direct right of action in Virginia; the insurance carrier of an individual at fault in a collision cannot be sued.

51. On February 3, 2013, Mr. Ahmad wrote to the same representative and provided him with a copy of the lawsuit he had prepared on behalf of Ms. Shervani against Ms. Pena.

52. On or about February 23, 2013, Mr. Ahmad provided Ms. Shervani with a copy of the lawsuit. It listed Mr. Ahmad, individually, as her attorney. A copy of the Verified Complaint filed by Mr. Ahmad was attached as **Exhibit H** to the original Complaint.

53. When Ms. Pena's counsel made it clear that they intended to raise the bar of the statute of limitations which had run on the claim almost 2 years earlier, Mr. Ahmad sought the

entry of a nonsuit order; however, given that the statute of limitations had expired, Ms. Shervani had no ability to refile the case against Ms. Pena in any event.

54. On March 4, 2013, Mr. Ahmad wrote to Ms. Shervani, and for the first time, admitted he had failed to timely file her case. A true and accurate copy of said email was attached as **Exhibit I** to the original Complaint filed herein.

55. Mr. Ahmad's representations and omissions were material.

56. Ms. Shervani reasonably relied upon Mr. Ahmad's representations and omissions in agreeing to be represented by him, and in continuing with him as her counsel; she placed her trust and confidence in him, and reasonably believed that he would act to protect her interests.

57. Mr. Ahmad's representations were false when made and were known by him to be false; alternatively, Mr. Ahmad made the representations with reckless disregard for their truth; Mr. Ahmad's representations were made for the purpose of inducing Ms. Shervani to retain him to represent her interests in her personal injury claim, and to induce her to continue his representation of her.

58. Mr. Ahmad omitted to inform Ms. Shervani of material facts so as to induce Ms. Shervani to retain him to represent her interests in her personal injury claim, and to induce her to continue his representation of her.

59. At all times, Mr. Ahmad had a duty to use a reasonable degree of care, skill and diligence in representing Ms. Shervani.

60. Contrary to his representations was not competent to represent the interest of Ms. Shervani, nor did he have the experience or capability to do so. Mr. Ahmad wholly failed to meet the standard of care required of him in his representation of Ms. Shervani, in particular, failing to have the fundamental and basic knowledge that in the Commonwealth there is a two

(2) year statute of limitations for personal injury claims, that the continuing treatment rule did not apply to Ms. Shervani's claim, and that a claim for personal injuries must be settled before the expiration of the statute of limitations, or if not settled, a Complaint for such a claim must be filed, within two (2) years of the date of the injuries.

61.     Mr. Ahmad did not settle Ms. Shervani's claims or file a Complaint seeking recovery for her injuries until February 13, 2013, almost twenty-two (22) months after the expiration of the statute of limitations.

62.     As a direct and proximate result of her reliance on the representations of Mr. Ahmad, his omission of material information regarding his competence, experience and skill, and his breach of the standard of care required of attorneys handling such matters, Ms. Shervani has been caused to sustain and continues to sustain damages.

WHEREFORE, Shamsiya F. Shervani, prays for judgment in her favor and against Defendants, Hassan M. Ahmad and The Hassan M. Ahmad Law Firm PLLC, doing business as The HMA Law Firm, jointly and severally, in an amount of at least Five Hundred Thousand 00/100 Dollars ($500,000.00); her costs expended herein, including reasonable attorney's fees; and a determination that such judgment is not dischargeable in bankruptcy.

**Shamsiya F. Shervani, Plaintiff**
*By Counsel*

**O'CONNOR & VAUGHN, LLC**
11490 Commerce Park Drive, Suite 510
Reston, Virginia  20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile

By: */s/ Robert L. Vaughn, Jr.*
        Robert L. Vaughn, Jr., VSB 20633
        *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2015, I caused a true copy of this Second Amended Complaint to be served on all parties of record via the Court's ECF filing system, and have also emailed a copy direct to counsel for the Defendant, Bernard J. DiMuro, Esq. at bdimuro@dimuro.com,

    /s/ Robert L. Vaughn, Jr.
Robert L. Vaughn, Jr.